# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-23-00378-CV

**Max Paul Kozinn, Appellant**

**v.**

**Kinneret Kozinn, Appellee**

### FROM THE 250TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-FM-21-007135, THE HONORABLE MADELEINE CONNOR, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Max Paul Kozinn appeals the trial court's order on appellee Kinneret Kozinn's petition for enforcement of orders included in the parties' Agreed Final Decree of Divorce (the Decree).[1] The trial court found that Max committed twenty-three violations of the Decree's provisions, held him in contempt for each violation, ordered him to comply with the Decree's provision to sign an amended tax return, and ordered him to pay Kinneret's counsel $47,138.50 in attorney's fees. We affirm.

## BACKGROUND

The parties divorced in June 2022. The Decree contained multiple provisions with which the parties were ordered to comply. One of the provisions addressed the parties' federal tax

---

[1] Because the parties share a surname, we will refer to them by their given names for clarity.

liabilities. For the years from the date of marriage to December 31, 2021, the parties had filed their individual tax returns as "married, filing jointly." It was ordered that both Max and Kinneret would be equally responsible for all tax liabilities, with each paying 50%. It was also ordered that if any refunds were made, each party would be entitled to one-half of the refunded amount. Finally, it was ordered that Max and Kinneret, within five days of the entry of the Decree, "execute and deliver to the other party any and all other deeds, deeds of trust, bills of sale, assignments, consents to change of beneficiaries of insurance policies, tax returns, and other documents, and will do or cause to be done any other acts and things as may be necessary or desirable to [e]ffect the provisions and purposes of" the Decree. It further stated: "If either party fails to comply with this provision, that party is ordered to pay all reasonable and necessary attorney's fees as a result of that failure."

In November 2022, Kinneret filed a cross-petition for enforcement of the Decree, which she amended in May 2023.[2] Kinneret's live petition alleged that Max had violated the Decree by failing to comply with the Children's Bill of Rights provisions of the Decree and that, relevant here, Max on three different occasions refused to sign an amended federal income tax return for 2020 and thereby prevented Max and Kinneret from receiving a tax refund of $2,287.00.[3] Kinneret's petition for enforcement requested that the court impose on Max a $500 fine for each

---

[2] Max filed his petition for enforcement first, alleging that Kinneret "violat[ed] the Children's Bill of Rights in denying the child reasonable use of the telephone to place and receive calls with [Max]." He also claimed that Kinneret "failed to comply with [the Decree] by failing to pay 50% of the taxes, penalties, and interest due for the 2021 tax year." Max sought damages, attorney's fees and costs, and a judgment for contempt.

[3] The Kozinns' CPA Larry Phillips prepared the parties' original tax return. Due to 2020 CARES Act unemployment tax credit cross-filings by the IRS and Mr. Phillips, which resulted in an overpayment of taxes, Mr. Phillips prepared an amended return to request a refund for the overpayment and an additional refund for the child tax credits.

violation of the Decree and order him to pay to her legal counsel the attorney's fees she incurred in securing legal services necessary to enforce and protect her rights and the rights of their minor child. In March 2023, both Max and Kinneret filed competing petitions to modify the parent-child relationship, each seeking to modify the terms of the parties' possession schedule of their minor child.

After a hearing, the trial court granted Kinneret's second amended enforcement petition and signed an order finding Max in contempt for committing twenty-three violations of the Decree, including three violations relating to Max's failure to sign a federal income tax return for 2020, ordered him to comply with the Decree's original directive to do so, and ordered him to pay Kinneret's attorney's fees. In three other orders, the trial court also granted Kinneret's petition to modify, granted in part Max's motion to modify, and denied Max's motion for enforcement. In two issues on appeal, Max asserts that the trial court abused its discretion by (1) ordering him to sign an amended tax return and (2) ordering him to pay Kinneret's attorney's fees. [4]

---

[4] Max filed a petition for writ of mandamus in this Court challenging the portions of the order holding him in contempt, which we conditionally granted in part. *See In re Kozinn*, No. 03-23-00748-CV, 2024 WL 2855077, at *4 (Tex. App.—Austin June 6, 2024, orig. proceeding) (mem. op.) (holding Decree's provision requiring Max take "age-appropriate parenting class" was too ambiguous to support contempt finding and constituted abuse of discretion). One of those challenges included the trial court's order holding him in contempt for failure to sign the amended tax return, which this Court declined to address. *See id.* at *5 n.8 (noting in mandamus proceeding that "[o]ur jurisdiction extends only to the contempt finding based on his refusal to sign an amended tax return" and declining to review trial court's order requiring him to sign the return because he had "adequate remedy by appeal" and referencing this appeal).

**Amended tax return**

In his first issue, Max asserts that the trial court abused its discretion in ordering him to sign an amended return because the order improperly modified the terms of the property division in the Decree.

A final, unambiguous divorce decree that disposes of all marital property bars relitigation even if the decree mischaracterizes or incorrectly divides the property. *Pearson v. Fillingim*, 332 S.W.3d 361, 363–64 (Tex. 2011). Section 9.001 of the Texas Family Code allows a party affected by a divorce decree to seek enforcement and clarification of the decree's property division by filing an enforcement and clarification petition. *See* Tex. Fam. Code §§ 9.001, .006, .008. The trial court may render further orders to assist in the implementation of, or to clarify, its prior orders. *See id.* § 9.006(a). However, "[a]n order to enforce the division is limited to an order to assist in the implementation of or to clarify the prior order and may not alter or change the substantive division of property," and trial courts "may not amend, modify, alter, or change the division of property made or approved in the decree of divorce or annulment." *Id.* § 9.007(a); *see also Hagen v. Hagen*, 282 S.W.3d 899, 902 (Tex. 2009) (seeking order to alter or modify divorce decree's property division constitutes impermissible collateral attack). We review a trial court's ruling on a motion for enforcement or clarification of a divorce decree for an abuse of discretion. *Hollingsworth v. Hollingsworth*, 274 S.W.3d 811, 815 (Tex. App.—Dallas 2008, no pet.); *Gainous v. Gainous*, 219 S.W.3d 97, 103 (Tex. App.—Houston [1st Dist.] 2006, pet. denied). A trial court abuses its discretion when it acts arbitrarily or unreasonably or without reference to any guiding rules or principles. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990).

Here, Max argues that the Decree did not contain a provision requiring the parties to file an amended tax return, and therefore the trial court lacked jurisdiction to enter such an order

now, given that its plenary power had expired. *See* Tex. Fam. Code § 9.007(b); *Zicker v. Stewart*, No. 03-04-00438-CV, 2006 WL 191787, at *3 (Tex. App.—Austin Jan. 27, 2006, no pet.) (mem. op.) (explaining that while Section 9.007 prevents modification of decree once it has become final, it does not prohibit trial court from exercising plenary power to modify decree within 30 days of signing of judgment). Because the original Decree did not contain a provision requiring him to sign an amended tax return, Max argues, the court's order to do so here improperly amends, modifies, alters, or changes the division of property and is thus unenforceable under Section 9.007 of the Texas Family Code.

We disagree. As we noted in our previous opinion, the Decree explicitly states that Max and Kinneret are required to "execute and deliver to the other party any and all other documents, and will do or cause to be done any other acts and things as may be necessary or desirable to [e]ffect the provisions and purposes" of the Decree. *See In re Kozinn*, No. 03-23-00748-CV, 2024 WL 2855077, at *1 (Tex. App.—Austin June 6, 2024, orig. proceeding) (mem. op.). The Decree also provides that each party is entitled to one-half of any refund of federal income tax for any year after the parties' marriage through December 31, 2021. *Id.* Thus, as we previously concluded, "[s]igning an amended tax return is execution of a document and commission of an act that effects the Decree's purpose of ensuring that Max and Kinneret each receive one-half of any tax refund for tax year 2020, a year of their marriage." *Id.* at *4; *see also* Tex. Fam. Code § 9.006(b) (providing court may "specify more precisely the manner of effecting the property division previously made or approved if the substantive division of property is not altered or changed"). Here, the trial court entered an order that Max "sign the amended 2020 federal income tax return, prepared by Mr. Larry Phillips, on or before 5:00 p.m. on June 23, 2023, and return the original copy to Kinneret Kozinn on [sic] by certified mail no later than

5

June 26, 2023." The order also provides precisely the manner in which Max was directed to sign and provide the amended tax return. The fact that the amended tax return was not referenced in the original Decree—because it did not yet exist—does not change Max's original obligations to execute and deliver tax returns to Kinneret, and we cannot conclude that the trial court's order impermissibly modifies, alters, or changes the division of property as set out in the Decree. *See Gonzales v. Pounds*, No. 07-21-00088-CV, 2022 WL 348403, at *6 (Tex. App.—Amarillo Feb. 2, 2022, no pet.) (mem. op.) (because decree provided that each party was responsible for one-half of couple's tax liability but did not specifically state how tax liability payment was to be made, trial court's order that Gonzales pay his one-half tax liability from outstanding balance of judgment "simply clarified and enforced the obligation already set forth in the decree" and was not abuse of discretion). Therefore, we hold that the trial court did not abuse its discretion in ordering Max to sign the amended tax return. We overrule Max's first issue.

**Attorney's fees**

In his second issue, Max challenges the trial court's award of attorney's fees to Kinneret's counsel in its enforcement order,[5] claiming that the award was not authorized by statute or by any contract between the parties.

*Whether attorney's fees were available*

A prevailing party may recover fees from the opposing party when authorized by statute or contract. *Brewer v. Lennox Hearth Prods., LLC*, 601 S.W.3d 704, 721 n.71 (Tex. 2020). Although we ordinarily review a trial court's decision to award attorney's fees for an abuse of

---

[5] In its modification order, the trial court awarded Kinneret an additional $200 in attorney's fees. Max solely challenges the fee award included in the trial court's enforcement order.

6

discretion, *Ridge Oil Co. v. Guinn Invs., Inc.*, 148 S.W.3d 143, 163 (Tex. 2004), "[t]he availability of attorney's fees under a particular statute is a question of law for the court." *Holland v. Wal-Mart Stores, Inc.*, 1 S.W.3d 91, 94 (Tex. 1999). Below, Kinneret requested attorney's fees in connection with her enforcement action, but she did not list the specific statute that authorized recovery. "If a party . . . pleads facts which, if true, entitle it to the relief sought, the party need not specifically plead the applicable statute to recover attorney's fees under it." *Patriot Contracting, LLC v. Shelter Prods., Inc.*, 650 S.W.3d 627, 657 (Tex. App.—Houston [1st Dist.] 2021, pet. denied).

Max did not object, either below or on appeal, to the sufficiency of Kinneret's pleadings to support an award of attorney's fees. "When the opposing party fails to specially except to a pleaded request for attorney's fees, the pleading requesting fees will be construed liberally in favor of the pleader." *Whallon v. City of Houston*, 462 S.W.3d 146, 165 (Tex. App.—Houston [1st Dist.] 2015, pet. denied). Additionally, where, as here, "a trial court does not specify the basis for its attorney's fee award, we will uphold its ruling on any basis supported by the evidence." *See Iola Barker v. Hurst*, 632 S.W.3d 175, 186 (Tex. App.—Houston [1st Dist.] 2021, no pet.).

Although Max argues generally that no statute supports the award of attorney's fees in this case, he discusses only one statute: Section 157.167 of the Family Code. This section provides that in an enforcement action, "if the court finds that the respondent has failed to make child support payments," or "if the court finds the respondent has failed to comply with the terms of an order providing for the possession of or access to a child, the court shall order the respondent to pay the movant's reasonable attorney's fees." Tex. Fam. Code § 157.167(a)-(b). According to Max, Section 157.167 did not authorize an award of attorney's fees in this case because Kinneret's

enforcement action related solely to conservatorship rights, rather than possession and access or child support.

However, we need not decide whether Max's theory is correct. Kinneret pleaded below that Max violated the terms of the parties' agreed divorce decree, and she requested attorney's fees in conjunction with enforcing the Decree. Another provision of the Family Code—Section 9.014—permits the award of attorney's fees in a suit brought to enforce the terms of a divorce decree. Tex. Fam. Code § 9.014. Moreover, Section 106.002 of the Family Code, "applicable to all [suits affecting the parent-child relationship], invests a trial court with general discretion to render judgment for reasonable attorney's fees to be paid directly to a party's attorney." *Tucker v. Thomas*, 419 S.W.3d 292, 296 (Tex. 2013); *see* Tex. Fam. Code § 106.002; *Lenz v. Lenz*, 79 S.W.3d 10, 21 (Tex. 2002) ("An attorney's fees award in a suit affecting the parent-child relationship is discretionary with the trial court."). Accordingly, we conclude that the trial court's award of attorney's fees in its enforcement order was supported by statute.

Max also argues that Kinneret was required to segregate evidence of attorney's fees incurred in the modification proceeding from those incurred in the enforcement proceeding. He further asserts that because Kinneret did not succeed on all aspects of her enforcement petition, she was required to segregate the attorney's fees incurred in pursuit of the successful claims from the unsuccessful ones. It is generally true that the party seeking attorney's fees must "segregate fees between claims for which they are recoverable and claims for which they are not." *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 311 (Tex. 2006). However, we need not reach the issue of whether Kinneret's attorney was required to segregate proof of fees; at no point during the hearing did Max object to the fact that proof of Kinneret's counsel's fees incurred in the enforcement suit were not segregated. As the Texas Supreme Court has held, "if no one objects

8

to the fact that the attorney's fees are not segregated as to specific claims, then the objection is waived." *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 389 (Tex. 1997); *see Horvath v. Hagey*, No. 03-09-00056-CV, 2011 WL 1744969, at *8 (Tex. App.—Austin May 6, 2011, no pet.) (mem. op.) (in bench trial, objection to segregation of fees must be raised during trial to be preserved); *Chambers v. Ochiltree*, No. 03-04-00143-CV, 2004 WL 2814288, at *5 (Tex. App.—Austin Dec. 9, 2004, no pet.) (mem. op.) (same). Accordingly, Max has not preserved error on this issue for appeal. *See* Tex. R. App. P. 33.1(a)(1). We overrule this portion of Max's issue.

*Sufficiency of the evidence*

Finally, we turn to Max's contention that the trial court abused its discretion by awarding $47,138.50 to Kinneret's counsel because the billing records offered as evidence were heavily redacted.

"When no evidence or insufficient evidence supports an award [of attorney's fees], the court abuses its discretion in making the award." *Woollett v. Matyastik*, 23 S.W.3d 48, 53 (Tex. App.—Austin 2000, pet. denied). "A claimant seeking an award of attorney's fees must prove the attorney's reasonable hours worked and reasonable rate by presenting sufficient evidence to support the fee award sought." *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 501–02 (Tex. 2019). "Sufficient evidence includes, at a minimum, evidence of (1) particular services performed, (2) who performed those services, (3) approximately when those services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for each person performing such services." *Id.* at 502.

Here, the trial court heard testimony from Kinneret's attorney regarding the services she provided to Kinneret in the enforcement action and the corresponding fees. She

testified that she has been practicing civil litigation—mainly in family law—since 2010, that she was familiar with the reasonable and customary rates that are charged by licensed attorneys of her level of experience in the Travis County and surrounding areas, and that she charged $400 per hour for this case for a total of 77.6 hours. Combined with the hourly rates of paralegals and other litigation staff, the billed total came out to $47,183.50. Kinneret's attorney introduced her billing records into evidence, showing the time she and her legal staff spent on various tasks for the enforcement suit, including drafting pleadings, engaging in discovery, preparing for the hearing, and making telephone calls with Kinneret and other individuals regarding Max's "harassing behaviors."

Kinneret's attorney testified that she incurred fees from doing tax research, preparing witnesses for the enforcement hearings, and from speaking to multiple law-enforcement agencies on several different occasions about Max's threats and false claims against Kinneret and others. She testified that Max regularly threatened Kinneret with legal action and that on multiple occasions he has either refused or threatened to refuse to release the child to the designated competent adult during possession exchanges. She explained that Max "has greatly caused these fees to increase and exceed what would be normally expected in a custody case" and that "the sole reason that this much time [has been incurred] is because of the constant chaos and the constant communications and threats that we have had to address with [Max], in addition to preparing for this hearing twice and also having to communicate with multiple witnesses and multiple law enforcement agencies in an effort just to keep [Kinneret] and [the child's] peace so that they're not disrupted by some sort of investigation or other attack that is brought to them by [Max]." She stated that it is "unfortunate but not unusual as to disparity [between parties] in the amount of

money spent." She further testified that she attempted to keep down costs as much as possible, including by writing off the "true billable work" provided by two summer associates.

Max cites our holding in *Person* to support his argument that the billing records are too heavily redacted to show what tasks were performed, when, by whom, and for which of the four lawsuits each task was related to. *See Person v. MC-Simpsonville, SC-1-UT, LLC*, No. 03-20-00560-CV, 2021 WL 3816332 (Tex. App.—Austin Aug. 27, 2021, no pet.) (mem. op.). But the holding in *Person*, as Max acknowledges, is that heavily redacted billing records *alone* cannot be sufficient evidence to support an award of attorney's fees, meaning that additional testimony from the lawyer was required. Thus, taking all the evidence together, we conclude that the redacted billing records were sufficient to show what services were provided, by whom, and on what dates, and that Kinneret's counsel's testimony provided sufficient evidence as to why the fees associated with those services were reasonable and necessary. *See Rohrmoos Venture*, 578 S.W.3d at 501–02; *see In re A.M.*, No. 02-18-00412-CV, 2020 WL 3987578 at *4–5 (Tex. App.—Fort Worth June 4, 2020, no pet.) (mem. op.) (attorney's testimony regarding qualifications, hourly rate as fair and reasonable among family law practitioners in his area and experience, time spent on case, and travel and attendance at hearing was sufficient to show that attorney's fees were reasonable and necessary). Moreover, because Max did not request findings of fact and conclusions of law, we will imply all findings necessary to support the trial court's judgment. *See Builders First Source-S. Tex., LP v. Ortiz*, 505 S.W.3d 451, 456 (Tex. App.—Houston [14th Dist.] 2017, pet. denied); *see Nipp v. Broumley*, 285 S.W.3d 552, 560 (Tex. App.—Waco 2009, no pet.) ("Because of the absence of any findings on the issue of attorney's fees, we will not render judgment in [appellant's] favor for attorney's fees."). We overrule this portion of Max's issue.

**CONCLUSION**

Having overruled Max's issues, we affirm the trial court's judgment.

_____

Maggie Ellis, Justice

Before Justices Triana, Kelly, and Ellis

Affirmed

Filed:   June 25, 2025